IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


WATERS V. LANG


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CAMERON L. WATERS, APPELLANT,

V.

DESREANNA R. LANG, APPELLEE.


Filed November 4, 2025.    No. A-24-973.


Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed.

Benjamin Lee Bramblett for appellant.

No appearance for appellee.


PIRTLE, WELCH, and FREEMAN, Judges.

WELCH, Judge.

## INTRODUCTION

Cameron L. Waters appeals from the order of the Sarpy County District Court denying his request to modify custody to limit Desreanna R. Lang's parenting time with the parties' minor child at Waters' discretion. Waters argues that the district court erred in failing to find that Lang engaged in intimate partner abuse. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

The parties were previously married and had one child during the marriage, Ella'Rae Waters, born in 2021. Although the original divorce decree is not included in the record before this court, from the record that we do have, it appears that the parties' divorce decree was entered in November 2023 and that the parenting plan attached to the dissolution decree awarded Waters sole legal and physical custody of Ella'Rae, subject to Lang's daytime parenting time. Lang was denied overnight parenting time due to a lack of stable housing.

- 1 -

In a separate case, in January 2024, following a hearing, the district court issued a harassment protection order in favor of Waters against Lang prohibiting Lang from imposing any restraint on Waters and from harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing Waters' peace. The details regarding the request for the protection order and the record from that hearing were not provided for purposes of appeal.

In March 2024, Lang filed a complaint for modification, which requested that the court approve her proposed parenting plan awarding the parties joint legal and physical custody of Ella'Rae. In his answer and counterclaim, Waters alleged that a material change in circumstances affecting the child's best interests existed due to Lang's "erratic behavior related to harassing [him] at custody exchanges; [Lang's] refusal to provide an address where she is exercising her parenting time following her eviction; [Lang's] failure to timely and consistently pay her child support award; and [Lang's] inability to timely arrive at custody exchanges." Waters further asserted that Lang committed domestic intimate partner abuse and made threats to cause him to fear for his safety. Waters requested that the court modify the parenting plan to protect himself and Ella'Rae from harm and to limit Lang's parenting time at Waters' discretion. He alleged that a modification of the parenting plan was in Ella'Rae's best interests.

The modification hearing was held in August 2024. Testimony was adduced from the parties and exhibits received into evidence included the protection order, Lang's bond conditions, video surveillance from Ella'Rae's daycare, and a text message from Lang to Waters.

Waters testified that between the time of the November 2023 divorce decree and the entry of the protection order in January 2024, there were two incidents during custody exchanges when Lang followed him to his car to ensure that Waters put Ella'Rae in her car seat correctly. Waters stated that Lang's act of following him to his car despite his requests for her not to do so caused him to feel harassed. Waters also testified to other occasions where he was driving and Lang followed him to his apartment or to Ella'Rae's daycare. Waters testified that during one incident, which occurred on August 20, 2024, he waited for Lang to arrive for the exchange but left after she failed to arrive on time. While driving away, Waters testified that he saw Lang "speeding around the corner" and that she "proceeded to turn around and follow me, tailgating me, all the way to the daycare facility." Waters testified that when he arrived at the daycare facility and attempted to close the door behind him, Lang "ripped the door open and took it out of my hands and proceeded to come inside of the daycare facility and follow me around the place." Waters was able to go to a secure location at the daycare to call law enforcement, after which Lang was arrested for violating the no-contact order in her bond release conditions. Waters testified that despite a no-contact order and a protection order, there were still incidents when Lang continued to follow Waters to his car during exchanges, would get too close to him, and would follow Waters in her vehicle. He stated:

> I mean, at first it started with her coming to my car, and then she would harass me there, just refusing to leave me alone. And, secondly, she would follow me to my apartment. And then, third, these [daycare] incidents, the one before and the one August 20th. It's just . . . a pattern of escalating behavior.

Lang acknowledged that she followed Waters back to his vehicle during exchanges but denied that she followed him to the daycare facility. Lang testified that she merely went to the

daycare to pick up Ella'Rae after Waters left the exchange location before the scheduled pick-up time. Lang further acknowledged that she contacted Waters' attorney following her release on bond to inquire about her parenting time.

In September 2024, Waters filed an application for ex parte emergency custody after Lang failed to return Ella'Rae on September 27. Waters requested that the court order Lang to return Ella'Rae and terminate Lang's parenting time until further order of the court. The court granted Waters' temporary request pending a hearing on the ex parte motion. During the hearing, Lang stated that she picked up Ella'Rae from daycare for her scheduled visit on the 27th, but that due to the no-contact order in place, she did not know how she was supposed to return her to Waters. The district court thereafter ordered that Lang's visitation occur at the daycare facility.

In November 2024, the district court entered an order denying Lang's complaint to modify and Waters' counterclaim, finding that no material change of circumstances was proven at trial. As relevant to this appeal, as it related to Waters' counterclaim, the district court specifically found no evidence that Lang engaged in domestic partner abuse, stating:

> [Waters] presented evidence that there has been a harassment protection order entered by the Court at CI 23-2053 as reflected in Exhibit #25, which was received at trial. Exhibit #23 was also presented to the Court, which shows a current case of violation of that harassment protection order being prosecuted by the State of Nebraska. The Court has also reviewed video in Exhibit #26 which depicts an event occurring between the parties as the minor child was brought to childcare. The Court presided over the protection order case at Cl 23-2053 and is aware that the parties do not get along. The Court, however, does not find that there has been a material change of circumstances. While continued conflict may form the basis of a material change of circumstances, the Court is not willing to do so in this case only four months after the entry of the Decree based on the evidence presented. The Court finds no domestic partner abuse as defined by statute as there is no evidence of bodily injury, either attempted, or intentionally and knowingly, nor a credible threat of bodily injury.

Waters now appeals from the district court's order denying his counterclaim to modify custody.

## ASSIGNMENT OF ERROR

Waters assigns that the district court erred in failing to find that he had proven Lang engaged in intimate partner abuse.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record and will be affirmed absent an abuse of discretion. *Mann v. Mann,* 316 Neb. 910, 7 N.W.3d 845 (2024). But when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Waters' sole assignment of error is that the district court erred in failing to find that Lang engaged in domestic partner abuse as defined under the Parenting Act. He contends that Lang's conduct of repeated and unrelenting harassment was sufficient to show domestic partner abuse.

Neb. Rev. Stat. § 43-2922(8) (Cum. Supp. 2024) provides in part:

Domestic intimate partner abuse means an act of abuse as defined in section 42-903 and a pattern or history of abuse evidenced by one or more of the following acts: Physical or sexual assault, threats of physical assault or sexual assault, stalking, harassment, mental cruelty, emotional abuse, intimidation, isolation, economic abuse, or coercion against any current or past intimate partner, or an abuser using a child to establish or maintain power and control over any current or past intimate partner, and, when they contribute to the coercion or intimidation of an intimate partner, acts of child abuse or neglect or threats of such acts, cruel mistreatment or cruel neglect of an animal as defined in section 28-1008, or threats of such acts, and other acts of abuse, assault, or harassment, or threats of such acts against other family or household members.

Neb. Rev. Stat. § 42-903(1) (Cum. Supp. 2024) defines "[a]buse" to mean the occurrence of one or more of the following acts between family or household members:

(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

(b) Placing, by means of credible threat, another person in fear of bodily injury. For purposes of this subdivision, credible threat means a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the person making the threat had the intent to actually carry out the threat. The present incarceration of the person making the threat shall not prevent the threat from being deemed a credible threat under this section; or

(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28–318[.]

For the purposes of § 42-903(3), spouses and former spouses are family members. Although we recognize that § 42-903 was amended effective September 10, 2025, that amendment became effective after the relevant time periods in this appeal.

On appeal, Waters argues that Lang's persistent harassment during pick-ups and drop-offs, which caused him to fear for his and Ella'Rae's safety, was sufficient to support a finding that Lang engaged in domestic partner abuse. Waters contends that Lang's tailgating of his vehicle was dangerous and could have led to an accident resulting in bodily injury, and that Waters should not be denied relief just because he is male, and if the roles were reversed, there would be "no question" that the behavior would be considered terrifying. Waters specifically contends that

"[Lang] is a terrible coparent who lacks the ability to set aside her vindictiveness towards her ex-spouse. This inability, coupled with apparent delusion and entitlement, lead to a pattern of conduct which amounted to intimate partner abuse, specifically placing [Waters] in fear of bodily injury."

Section 43-2922(8) specifically required Waters to first prove that an act of abuse occurred as defined in § 42-903. That is, that Lang attempted to cause or intentionally and knowingly cause bodily injury to Waters or Ella-Rae with or without a dangerous instrument, or that Lang placed Waters or Ella-Rae, by means of credible threat, in fear of bodily injury.

A similar argument was made by the appellant in *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). In *Mann*, the appellant argued that his former spouse had been found guilty of stalking and that the facts supporting that conviction should qualify as domestic intimate partner abuse as contemplated by § 43-2922. But as the Nebraska Supreme Court noted:

> Under § 28-311.03, stalking involves willful harassment "with the intent to injure, terrify, threaten, or intimidate." "Abuse" under § 42-903, in contrast, involves, as relevant here, attempting to cause or intentionally and knowingly causing bodily injury or placing, by means of a credible threat, another person in fear of bodily injury. In other words, the crime of stalking set forth in § 28-311.03 can occur without the intent to injure, while "[a]buse," as defined in § 42-903, requires that bodily injury be caused, attempted, or credibly threatened, or other conduct not relevant here.

*Mann v. Mann*, 316 Neb. at 923, 7 N.W.3d at 857-58.

We make a similar finding here. Harassment, as defined in Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016), means "to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Like stalking, the act can occur without the intent to injure. "Abuse," as defined in § 42-903, requires that bodily injury be caused, attempted, credibly threatened, or that other conduct not relevant in this case occur.

Here, there was no evidence that Lang attempted to cause or did cause bodily injury to either Waters or Ella'Rae, nor was there evidence that Lang made a credible threat to Waters or Ella-Rae placing either of them in fear of bodily injury as required for a finding of abuse under § 42-903. Although Waters contends that Lang's behavior caused him to fear for his safety, he did not testify that Lang intentionally and knowingly caused or attempted to cause him bodily harm. Nor did he testify that Lang made any credible threats to cause him to fear bodily harm. Although Lang's actions may constitute harassment as evidenced by the court granting a protection order against Lang, we find no abuse of discretion on this record in the court's finding that the actions did not constitute "abuse" as defined in § 42-903. Therefore, having failed to prove an act of abuse as defined in § 42-903, we need not decide whether the alleged harassment amounted to a pattern or history of abuse. See, *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024) (holding that no evidence was presented that ex-husband attempted to or intentionally and knowingly caused bodily injury to ex-wife, nor by means of credible threat placed ex-wife in fear of bodily injury); *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019) (stating language indicates that act of abuse previously identified must be coupled with "pattern" or "history," suggesting that before factual findings are required, the Legislature wanted more than one act of abuse). And, despite Waters'

arguments to the contrary, having found that Lang's conduct did not constitute domestic intimate partner abuse, the court's additional obligations as set forth in Neb. Rev. Stat. § 43-2932(3) (Reissue 2016) related to parenting plans in certain situations, including where a court has determined that a parent has committed domestic intimate partner abuse, were not applicable to the instant case.

CONCLUSION

Having rejected Waters' claim that the district court erred in failing to find that he had proven that Lang engaged in intimate partner abuse, we affirm the order of the district court.

AFFIRMED.