IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SMITH V. GREENWALT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KARREN SMITH, NOW KNOWN AS KARREN BENTLEY, APPELLANT,

V.

DUSTIN GREENWALT, APPELLEE.

Filed August 13, 2024.    No. A-23-657.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed.

Haley L. Cannon and Brent M. Kuhn, of Brent Kuhn Law, for appellant.

Kristina B. Murphree and John Andrew McWilliams, of Gross, Welch, Marks & Clare, P.C., L.L.O., for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Karren Smith, now known as Karren Bentley, appeals from the order of the district court for Douglas County, denying her applications to hold Dustin Greenwalt in contempt for failing to comply with prior orders of the court entered in the parties' paternity action. On appeal, she assigns error to the court's failure to hold Dustin in contempt and its award of attorney fees to Dustin based on the court's finding that her filings were made in bad faith. We affirm.

## II. STATEMENT OF FACTS

### 1. PATERNITY DECREE, MODIFICATION, PRIOR APPEAL

The parties are the parents of two children, a girl born in 2016 and a boy born in 2018. Pursuant to the paternity decree entered by the district court on March 1, 2022, the court awarded

- 1 -

the parties joint legal custody of the children and Karren sole physical custody, and it ordered Dustin to pay child support.

Less than a month later, on March 25, 2022, Dustin filed a complaint to modify the decree, in which he alleged a material change in circumstances and sought sole legal and physical custody of the children. In Karren's answer and "counter complaint" for modification filed on September 8, she alleged a material change in circumstances due to Dustin's "wrongful conduct" since entry of the decree, and she sought sole legal custody. And, on October 31, Dustin filed an application for contempt, alleging Karren's interference with his parenting time.

The evidence at the modification and contempt trial related to the repeated claims by Karren and her husband that Dustin was subjecting the children to sexual and physical abuse. The evidence showed that Karren took the children to the emergency room and other medical providers on multiple occasions in connection with her claims, but that her claims of abuse were not substantiated.

Following trial, the district court entered an order of modification on December 30, 2022, awarding Dustin sole legal and sole physical custody of the children, and also finding Karren in contempt of court for willfully interfering with Dustin's parenting rights. Karren filed a motion to alter or amend, requesting, among other things, that the court enter its rulings on the modification and contempt proceedings in separate orders. The court granted that request and on January 30, 2023, it entered an amended modification order and a separate order of contempt. In the amended modification order, the court made extensive findings and determined that the allegations made by Karren and her husband as to Dustin's physical and sexual abuse of the children were not supported by the medical evidence presented at trial. The court denied Karren's request for sole legal custody, awarded Dustin sole legal and sole physical custody of the children, and ordered Karren to pay child support. Karren appealed.

In our memorandum opinion, we modified Karren's child support obligation to give her certain deductions supported by the evidence. We affirmed the district court's amended modification order in all other respects. See *Smith v. Greenwalt*, No. A-23-145, 2024 WL 19978 (Neb. App. Jan. 2, 2024) (selected for posting to court website).

### 2. RELEVANT PROVISIONS OF PRIOR ORDERS

The current contempt proceedings involve Karren's allegations that Dustin failed to comply with certain provisions of the paternity decree, the modification order, and the amended modification order. The relevant provisions are as follows.

### (a) Telephonic Parenting Time

The parenting plans attached to the modification order and the amended modification order both provide for telephonic parenting time:

10. [Karren] and [Dustin] agree that the children will have access to telephone/zoom/and/or video calls with the other parent as set forth below.

a. The parents shall call between the hours of 7:00 p.m. and 8:00 p.m. on Tuesdays and Thursdays. Calls shall be limited to 15 minutes per child.

b. One parent shall not attempt to engage the other parent during calls to the children.

c. Neither parent shall interfere with the parenting call time of the other parent.

d. The parents will not ask the children to relay messages to the other parent.

e. If the child is otherwise engaged outside of the home, the parent with whom the child is staying shall inform the other parent and suggest other appropriate times for the call.

[f.] The phone calls shall be between the parents and children only - no significant others.

## (b) Payment of Expenses

With respect to childcare expenses, the paternity decree provides:

[Karren] and [Dustin] shall divide all work/education related child-care expenses as follows: [Karren] shall pay 56% and [Dustin] shall pay 44%. Both parties shall timely pay their childcare obligation directly to the child-care provider whenever possible. If it is not possible for both parties to pay the child-care provider directly, the paying party shall collect all reimbursable bills under this order, and shall collectively submit proof of payment to the non-paying party at the end of each month. The non-paying party shall have 30 days to reimburse the paying party. Parties shall provide each other with the name and address of all child care providers.

As to the division of health care expenses, the decree provides:

The parties shall divide the reasonable and necessary unreimbursed health care expenses of the minor children as follows: [Karren] shall be responsible for the first $250 for each child per year of unreimbursed reasonable and necessary health care expenses, thereafter, the parties shall divide all expenses – [Karren] paying 56% and [Dustin] paying 44%. Health care expenses shall include medical, dental, orthodontic, optometric, substance abuse, and mental health treatment. Both parties shall pay the health care provider directly whenever possible. If it is not possible for both parties to pay the health-care provider directly, the paying party shall collect all reimbursable bills under this order, and shall collectively submit proof of payment to the nonpaying party at the end of each month. The nonpaying party shall have 30 days to reimburse the paying party.

In the modification order and the amended modification order, the percentage of health care expenses for which each party was responsible changed due to the district court's modification of custody and child support, with Dustin being required to pay the first $250 of unreimbursed health care expenses for each child per year and Karren and Dustin being responsible for 59 percent and 41 percent, respectively, of unreimbursed health care expenses thereafter. The same percentages were used for the parties' division of childcare expenses in the modification and amended modification orders, and the number of days the nonpaying party had to reimburse the paying party for both health care and childcare expenses was reduced to 20 days.

## (c) Resolution of Parental Conflict

The parenting plans attached to the paternity decree, the modification order, and the amended modification order, all include the same requirements for resolving conflicts under the parenting plan in paragraph 17:

> To resolve future changes or conflicts regarding parenting functions, parenting time or this plan, the parents shall first seek solutions through mutual agreement by identifying the issues, providing an opportunity for exchange of information, and providing an opportunity for the consideration of proposed solutions to the issues in a way which minimizes the exposure of each child to parental conflict. The parents shall attempt to minimize repeated litigation and utilize judicial intervention as a last resort by use of the mediation process outlined in the Nebraska Parenting Act, prior to resorting to the court system.

## 3. CURRENT CONTEMPT APPLICATIONS

On February 1, 2023, Karren filed a motion to show cause and affidavit, alleging that Dustin failed to obey the terms set forth in the paternity decree, the modification order, and the amended modification order.

A show cause hearing on Karren's motion was scheduled for February 9, 2023, but the hearing on that date was not preserved on the record. Another hearing on Karren's motion was held on February 24. Because Karren failed to submit her exhibits 48 hours prior to the hearing as required by local court rule, the district court declined to receive them, and Karren voluntarily dismissed her first motion to show cause.

On March 6, 2023, Karren filed a second motion to show cause, again alleging that Dustin had failed to obey the terms of the paternity decree, modification order, and amended modification order. She filed a third motion to show cause on April 27, alleging Dustin's violation of the amended modification order. In her affidavits, Karren generally alleged that Dustin was in willful contempt of the paternity decree, the modification order, and the amended modification order for failing to reimburse her for various childcare and health care expenses; and interfering with or denying her phone parenting time on various occasions. Karren also alleged that Dustin was in contempt for claiming the parties' older child on his tax return and being 13 minutes late to a particular parenting time exchange. Because she has not assigned error or made argument on appeal relative to these allegations, we do not address them further.

On May 5, 2023, Dustin filed a motion for attorney fees under Neb. Rev. Stat. § 25-824 (Reissue 2016), asking the court to award him $5,000 in attorney fees for defending Karren's three contempt motions. Dustin alleged that Karren's motions were frivolous, brought in bad faith, and designed to harass him.

## 4. CONTEMPT HEARING

Trial was held on the parties' motions on May 9 and June 16, 2023. The district court heard testimony from Karren, Dustin, and Dustin's father, and received various exhibits into evidence. We have summarized the relevant evidence below.

(a) Evidence About Telephonic Parenting Time

In her contempt affidavits, Karren asserted that Dustin had interfered in various ways with her phone parenting time with the children in 2023, on January 5, 12, and 31; February 14, 16, 23, and 28; March 21 or 23 and 28; and April 2, 18, and 20. At trial, she testified about her understanding of the parties' parenting plan with respect to phone parenting time as well as the specific allegations of interference raised in her affidavits. Dustin and his father also testified about these issues.

*(i) Karren's Understanding of Parenting Plan*

Karren was questioned about various provisions of the telephone parenting time portion of the parenting plan, including the provision that calls "shall be limited to 15 minutes per child." Karren agreed that she was not entitled to a "minimum amount of time" on the phone with each child. Although she later testified that she was "entitled to 15 minutes with each child," upon further questioning, she agreed that the phrase "limited to" in the parenting plan meant that she "can have up to 15 minutes." With respect to the parenting plan provision specifying "[i]f the child is otherwise engaged outside of the home, the parent with whom the child is staying shall inform the other parent and suggest other appropriate times for the call," Karren agreed that communications about scheduling conflicts did not need to occur in advance of the call. She also agreed that the parties could schedule additional telephonic parenting time outside of times specified in the parenting plan (7 p.m. to 8 p.m. on Tuesdays and Thursdays) if those times did not work. She expressed her reluctance, however, to participate in calls outside of the specified times because she had previously been sanctioned by the district court for "do[ing] things outside of the Order." She claimed a concern that the court might decrease her parenting rights even if any extra parenting time was offered to her by Dustin.

*(ii) Evidence About Specific Phone Calls*

Karren's claims about Dustin's interference with her telephonic parenting time related to 12 specific phone calls between January and April 2023. We briefly address the evidence with respect to each of these calls.

Karren did not receive any communication from the children between 7 p.m. and 8 p.m. on January 5, 2023. The record indicates that Dustin had some "service outages" on that date due to an ice storm. After the designated time passed, Dustin sent Karren a message in the parties' parenting app about his "service issues." He offered her makeup time for the call, which Karren refused because she was "not going to violate the parenting order." In the parties' messages about the missed call, Karren also accused Dustin of being untrustworthy.

Karren's phone call with the children on January 12, 2023, "dropped" after about 22 minutes due to a reminder alarm on Dustin's phone. Dustin testified that the termination of the call on that date was unintentional. Shortly after the call ended, Dustin offered to start a new call between the children and Karren and provided a new link for the call. Karren did not use the new link to resume her call; she testified that at that point, she "didn't want to have an argument with them [sic], so [she] was not going to engage anymore."

There were audio issues with the January 31, 2023, phone call. According to Karren, she only had phone parenting time of about 2 minutes on that date. She testified that Dustin "switched

it to a phone that [she] could hear them for 2 minutes and then switched it back to the phone where [she] c[ould]n't." She testified that she asked Dustin to use the device where she could "hear the children" but that he would not do so. Apparently, there had been an issue with the microphone on one of Dustin's phones; he purchased new headsets for the children, but they were not working on January 31. Because of the audio issue with the January 31 call, Dustin offered Karren makeup time, but she did not accept it.

According to Karren, her phone call with the children on February 14, 2023, "was ended abruptly, quickly on the other end," after about 20 minutes. She "just saw a hand or something coming and pushing the button, and end the call." Karren's communications on the parties' parenting app for that date indicate that the parties' youngest child was pulled away from the call by Dustin's father to address a hygiene issue; she did not communicate on the app that the call was ended abruptly by "a hand or something." Dustin offered additional parenting time, but Karren did not accept it.

Karren expressed concern that Dustin spent the first 5 minutes of the call on February 16, 2023, showing his father how the Zoom app worked and testified that she was "not allowed to make up the time for that." Karren acknowledged, however, that she received "time" with the children after that 5-minute period. She did not express her concern to Dustin on the date of the call about his efforts to teach his father how to use Zoom.

Karren identified several issues with the February 23, 2023, call. She testified that the youngest child left the room because he did not want to talk. According to Karren, Dustin's father then came into the room, began screaming at the older child and Karren, and insisting that the youngest child be given the phone. Karren acknowledged that she spoke with both children on February 23, but she stated it "wasn't really a worthwhile conversation."

Dustin's father also testified about the February 23, 2023, call. According to him, the youngest child came to him about 15 minutes after Dustin left for work, complaining that he did not get to speak to Karren. Dustin's father testified that he took the child back to the room where the call was taking place and asked the other child to share the phone. He stated that when the older child handed the phone to the younger child, the call became disconnected for 3 or 4 minutes but that he reconnected the children with Karren. Dustin's father acknowledged that he expressed his frustration about the younger child being excluded from the call in a way that might have hurt the older child's feelings and "brought her tears," but he denied yelling at her. According to Dustin's father, he then returned to the other room, leaving the children on the call with Karren. He estimated that the call lasted for another 20 minutes after he left the room, for a total call length of about 40 minutes. Dustin's father did not recall entering the room to help with calls on any other occasion.

As to the call on February 28, 2023, Karren only indicated that her telephone parenting time was cut short; she did not provide other details about the call. Dustin's testimony and the parties' parenting app communications show, however, that Karren communicated to Dustin at the time that the call ended after 27 minutes. Although Dustin offered to have the call restarted, Karren accused him of "lying." When cross-examined at trial about these statements she made through the parenting app, Karren again claimed that Dustin was "a liar."

The phone call on March 16, 2023, occurred while the children were shopping and having a meal at a grocery store. Karren testified to her belief that the children were distracted during the

call, which she claimed ended after 5 minutes. At the time, Karren did not communicate with Dustin through the parenting app about the length of the call or tell Dustin that there was any problem with it. And, she never asked for the call to be rescheduled. We note that in her affidavit, Karren misidentified these events as having occurred on either March 21 or 23.

On March 28, 2023, Karren's call again occurred while the children were having a meal at a grocery store. According to Karren, she spoke with the oldest child for about 10 minutes, and she "didn't get to communicate with [the youngest child] pretty much at all." She testified that Dustin's girlfriend was present, and she could hear the youngest child interacting with her during the call. In his testimony, Dustin denied that his girlfriend interfered with the call. According to Dustin, he and his girlfriend were sitting in an adjacent booth because they did not want to interrupt the call. He acknowledged giving certain instructions to the children during the call to facilitate the children's participation in Karren's parenting time. It was not until after the March 28 call that Karren first complained about calls taking place while the children were at the grocery store. However, she never asked Dustin for additional or makeup parenting time at a less distracting location.

The next phone call identified by Karren in her contempt affidavit was April 2, 2023. Karren testified at trial, however, that after reviewing her records, she found that the call actually occurred on April 6. The April 6 call lasted about 20 minutes. Karren testified that Dustin tried to tell the oldest child "what to do and things" during the call and that throughout the call she could hear him "trying to give [the child] commands." Karren's message to Dustin on the parenting app after the call stated, "Stop yelling at [the oldest child] for things she isn't doing." On cross-examination, Karren acknowledged that she "was given some parenting time" on April 6.

Karren testified that the call on April 18, 2023, started when the children were in the car and ended in a restaurant. According to Karren, the children were distracted by the program playing on the television at the restaurant and she "could hear the waitress more than [she] could hear the kids" during the call. She testified that the call lasted for about 8 minutes. Karren did not communicate with Dustin about the length or location of the call through the parenting app on that date.

The last call identified in Karren's affidavit occurred on April 20, 2023. Karren testified that the children "were pulled away from the call," Dustin instructed the children not to talk about him or his girlfriend, Karren could "hear coaching and questions going on back and forth," and she had to say, "I can hear you," in order to "get it to stop." She testified that she was able to speak to the children for about 10 minutes. In his testimony, Dustin stated that the call took place on the way to and at a restaurant. Karren sent messages to Dustin in the parenting app on April 20, asking him not to take the children to restaurants during her call time and stating that Dustin and his girlfriend were not to be part of the calls. Dustin testified that his girlfriend was not present on that occasion. He stated that he did "wave, point to the phone" anytime the oldest child was "turning around." Karren told Dustin on the phone that having the call at the restaurant was distracting, and she ended the call. She did not ask to have further telephone parenting time after the children returned home.

(b) Evidence About Payment of Expenses

In addition to the parties' testimony about the issue of expense reimbursement, the district court received exhibits including copies of the affidavits attached to Karren's contempt motions, correspondence between the parties' attorneys, and a spreadsheet created by Karren, showing the reimbursements she alleged Dustin still owed.

Karren's attorney sent a letter, dated January 12, 2023, to Dustin's attorney concerning Dustin's failure to reimburse Karren for childcare and medical bills. The letter stated that Dustin owed $3,675.61 in reimbursements and that if Karren did not receive that amount within 5 days, they would be filing for contempt. A chart purporting to show "all the reimbursements [Dustin] has failed to provide" for December 2021 and September through December 2022, was attached. The chart lists the providing institution for each expense, the amounts Karren paid and her payment dates, the amounts Dustin owed, and the "Date Sent to Dus[tin]," as well as the "Date Dustin Late" for each expense. Unlike an updated version attached to Karren's March 2023 affidavit and separately admitted at trial as exhibit 131, the chart sent by her attorney did not include any substantive information about the nature of the listed expenses beyond the names of the service providers.

Dustin's attorney responded with a letter asking Karren's attorney to have Karren "provide us with the date of *service/treatment and the purpose of treatment* for each of these claims." (Emphasis in original.) The copy of the letter from Dustin's attorney in the record is undated although Dustin suggests in his brief that it was sent January 20. The record does not show when the requested information was provided to Dustin's attorney, but Dustin did reimburse expenses unrelated to Karren's abuse allegations on February 19. Karren filed her first contempt motion on February 1, however, she voluntarily dismissed that motion and filed her second contempt motion on March 6, after the reimbursement had been made by Dustin.

In Karren's March 2023 affidavit, she stated Dustin was in contempt for not reimbursing her for childcare expenses related to work/education and health care expenses that were reasonable and necessary within 30 days pursuant to the paternity decree. She attached a chart showing the reimbursements she alleged Dustin owed her for expenses from September through December 2022 for a "New Total Owed After 2/19/23" of $1,744.40. She stated that Dustin was late in reimbursing her for expenses in various ways, with the last payment by Dustin identified in her affidavit being on February 19, 2023. Karren stated that she "attempted to handle the matter outside of the [c]ourt" and had her attorney draft a letter (the letter referenced above) to opposing counsel, but that she had not received any of the reimbursements for childcare or health care expenses.

In her April 2023 affidavit, Karren alleged Dustin was in contempt for not paying his portion of health care expenses within 20 days pursuant to the modification order and amended modification order. Specifically, she alleged that Dustin had been late in reimbursing her for "the expense relating to lab work done for vaginitis," that she informed Dustin of her payment on March 9, 2023, but that she had not been reimbursed by him for that expense. Her attached chart shows that this expense was incurred on March 21, 2022, for the parties' oldest child and the amount allegedly owed by Dustin was $312.88.

At trial, the district court received the updated spreadsheet chart prepared by Karren (exhibit 131) showing reimbursements Dustin allegedly owed her for expenses from September

through December 2022. Karren testified that Dustin still had not reimbursed her for $1,744.40 of the children's medical expenses shown on the spreadsheet. Exhibit 131, which includes both childcare and health care expenses for the children, shows that Dustin paid the expenses listed for "Child Care," "Fillings," and "Antibiotics," on February 19, 2023. He did not pay medical expenses totaling $1,744.40; the exhibit identified the reasons for these medical provider visits for the children, including "Finger put up butt," "EEG," "Vomiting Blood," "Refusing to eat and vomiting," "Vaginitis," and "Pushed down stairs." Karren's testimony at trial, shows that these medical expenses were for visits relating to the unfounded allegations of physical and sexual abuse she raised in the prior modification proceedings. The record shows that the vaginitis-related expense identified in Karren's April 2023, affidavit also related to her allegations of abuse.

Dustin's trial testimony indicates that after receiving sufficient information about the expenses for which Karren was still seeking reimbursement, he reimbursed her on February 19, 2023, for expenses unrelated to Karren's claims of abuse and those incurred prior to entry of the paternity decree. Dustin did not reimburse Karren for health care expenses relating to her allegations of abuse because he felt those expenses were "unreasonable and unnecessary."

Karren's evidence at trial about Dustin's late expense reimbursements focused on those he made on February 19. Karren submitted receipts to Dustin through the parenting app used by the parties. Karren testified that the statements she sent to Dustin "actually say exactly what they're for on them, so he could just read the data [sic] service, and what it was for." A review of the documentation provided to Dustin is less clear, however, showing, for example, descriptions such as "EMERGENCY/URGENT CARE," "PROFESSIONAL FEES – EMERGENCY ROOM," and "ESTABLISHED PATIENT VISIT LEVEL 3." A bill for provider "Pedodontics, PC" reflects a prepayment on estimated costs rather than the payment of actual expense. Dustin testified that he initially did not pay the health care and childcare expenses submitted to him by Karren because he needed more information about the expenses involved. And, he testified that he was "concerned" and "curious" about the unusually high childcare costs submitted by Karren.

### (c) Evidence About Attorney Fees

Dustin requested attorney fees on the basis that Karren's contempt motions were frivolous and in bad faith. The district court received two attorney fee affidavits from Dustin's attorney into evidence. The record shows that Dustin incurred attorney fees of $10,293.50 for the contempt proceedings from February 2 to May 23, 2023, which were in addition to attorney fees of $38,088.70 he incurred for the modification proceedings through January 30, 2023.

As related to the issue of whether Karren's contempt filings were made in bad faith, Karren admitted at trial that she did not seek mediation before filing her contempt motions.

### 5. CONTEMPT ORDER

On August 1, 2023, the district court entered an order ruling on Karren's applications for contempt. The court found that Karren failed to establish by clear and convincing evidence that Dustin willfully and contumaciously violated the paternity decree, order of modification, or amended order of modification. And, the court found Dustin's actions to be justified and reasonable based on the evidence at trial. The court noted the provision in paragraph 17 of the parenting plan in its prior orders (paternity decree, modification and amended modification order)

requiring the parties to first seek solutions through mutual agreement to resolve conflicts and to attempt to minimize repeated litigation by utilizing mediation prior to resorting to the court system. The court found that Karren's failure to make any attempt to resolve the issues found in her contempt applications prior to filing them and her failure to use or attempt to use the mediation process before resorting to the court to be a direct violation of the parenting plan outlined in all three prior orders. In considering Dustin's request for attorney fees under § 25-824.01, the court found that Karren's "blatant and willful failure" to comply with the explicit terms of the parenting plan, and her failure to "even attempt to mediate" any of the issues raised in her contempt [applications], clearly showed that this contempt action was prosecuted in whole or in part in bad faith. The court found that Karren was required to comply with paragraph 17 of the parenting plan and that her bad faith in failing to do so should result in an award of attorney fees in Dustin's favor. Accordingly, the court denied Karren's applications for contempt and awarded Dustin attorney fees of $5,000 to be paid by Karren to Dustin within 90 days of the court's order.

## III. ASSIGNMENTS OF ERROR

Karren asserts that the district court abused its discretion in (1) failing to find Dustin in contempt of court for his interference with and denial of parenting time and his failure to reimburse certain expenses, (2) finding Karren's filings for contempt were frivolous or filed in bad faith, and (3) awarding Dustin attorney fees.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction imposed are reviewed for abuse of discretion. *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Id.*

## V. ANALYSIS

### 1. CONTEMPT

Karren asserts that the district court abused its discretion in failing to find Dustin in contempt of court for his interference with and denial of parenting time and his failure to reimburse certain expenses. We have first set forth case law relevant to contempt proceedings before addressing the specific arguments Karren makes on appeal.

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Id.* "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id.*

## (a) Phone Parenting Time

Karren alleged that Dustin violated the telephone parenting time provision of the parenting plan on 12 dates between January and April 2023. Generally, the violations alleged by Karren were that on certain occasions her parenting time was missed or cut short, Dustin transferred responsibility to his father to manage the call, the children were not at home when the call occurred, Dustin actively interfered with the call by using equipment that did not work or teaching his father to use certain technology, or Dustin gave instructions to the children during the call. The district court found that Karren failed to establish by clear and convincing evidence that Dustin willfully and contumaciously violated the court's order and further found Dustin's actions justified and reasonable under the evidence established at trial. We agree.

The parenting plan provides for telephone parenting time between 7 and 8 p.m. on Tuesdays and Thursdays, limited to 15 minutes per child. The parents are not to attempt to engage the other parent during these calls or interfere with the parenting time call of the other parent, and the calls are to be between the children and parents and not any significant others. And, if the child is otherwise engaged outside the home, the parent the child is staying with shall inform the other parent and suggest other appropriate times for the call.

Our review of the record shows no willful contempt by Dustin. As to calls that Karren claimed did not last a full 30 minutes, i.e., a full 15 minutes per child, the parenting plan only provides for calls "limited to 15 minutes per child." The only call that appears to have been missed entirely was due to weather conditions, and Karren refused the proffered makeup time. On the few occasions where the calls complained of by Karren in her contempt applications took place outside the home, she either did not inform Dustin of problems with the call or again, refused his suggestions of other appropriate times for the call. Contrary to Karren's assertions, the parenting plan does not prohibit her from participating in parenting calls offered by Dustin at other times. There were several instances in which Dustin offered to begin a new call or schedule additional telephone time which Karren declined to accept. There is not any indication that Dustin's girlfriend ever participated directly in any of the calls at issue and facilitation of calls by Dustin's father once Dustin leaves for work is understandable and not prohibited. Karren has not shown that any attempts by Dustin to test or teach technology at the start of any calls prevented calls from occurring. Use of improved technology would seemingly enhance the calls between Karren and the children. Dustin's attempts to redirect the children's behavior during calls, likewise, is not willful contempt. Such efforts seem reasonable and likely given the young ages of the children. The district court did not err in failing to find Dustin in contempt of the telephone parenting time provisions of the parenting plan.

## (b) Expense Reimbursement

The paternity decree provides that the parties are to divide "the reasonable and necessary unreimbursed health care expenses for the minor children" and "all work/education related child-care expenses." The decree and modification orders set forth the percentages of these expenses for which each party is responsible and the timeframe in which the nonpaying party is to reimburse the paying party. Karren alleged in her contempt applications that Dustin was late in reimbursing her for certain expense payments and failed to reimburse her for others. Her evidence at trial and arguments on appeal focus on those expenses Dustin had not yet reimbursed after

making a payment to her on February 19, 2023. The district court found no willful contempt, and we agree. The record shows that the information initially provided by Karren to Dustin about the expenses for which she sought reimbursement was less than informative. Dustin reimbursed Karren for certain of those expenses on February 19 once Karren provided more detailed information. The unpaid health care expenses as of the date of trial related to Karren's unfounded allegations of abuse, and we cannot say that the district court erred in finding Dustin was not in contempt for failing to reimburse those expenses.

## 2. ATTORNEY FEES

Karren asserts that the district court abused its discretion in finding her filings for contempt were frivolous or filed in bad faith and in awarding Dustin attorney fees. She argues that she had a legal right to hold Dustin accountable for failing to abide by the terms of the relevant orders. She also notes the January 12, 2023, letter sent by her attorney to Dustin's attorney requesting reimbursement, as well as the fact that Dustin's payment of certain expenses did not occur until February 19, after her first contempt application was filed on February 1.

Attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* Dustin sought attorney fees pursuant to § 25-824, which provides for "reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith." In contempt actions in domestic relations cases, a trial court is authorized to award attorney fees only against a party found to be in contempt under Neb. Rev. Stat. § 42-370 (Reissue 2016) or Neb. Rev. Stat. § 42-364.15 (Reissue 2016), or if a trial court determines the contempt action is frivolous or made in bad faith, attorney fees maybe be awarded under § 25-824. See *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023).

Here, the district court found that Karren's contempt applications were made in bad faith, specifically citing her failure to abide by the provision of the parenting plan pertaining to resolution of parental conflict. We note that the first of Karren's contempt applications was filed within 2 days of the court's entry of the amended modification order on January 30, 2023. Karren admitted at trial that she did not seek mediation before filing for contempt. We do not view the letter sent by her attorney on January 12 as an attempt by Karren to resolve matters outside of the court system as required by the parenting plan. The letter states that Karren will be filing for contempt if the amounts shown in the attached chart were not received within 5 days. The chart did not include the more detailed information about the expenses that was provided later after inquiry by Dustin's attorney. The record does not show when that information was provided to Dustin or whether it was provided before Karren filed her first contempt motion on February 1. Dustin paid the "reasonable and necessary" healthcare expenses unrelated to Karren's unfounded abuse allegations on February 19, and his testimony shows that he made this payment once further information was provided to him. Karren's first contempt motion was dismissed, however, she filed another contempt motion on March 6, after Dustin made the reimbursement payment.

With regard to Karren's allegations that Dustin was in contempt of the provisions regarding telephone parenting time, aside from certain discussions on the parenting app, Karren did not attempt to resolve any issues relating to telephone parenting time prior to filing her contempt action. More importantly, Karren's evidence did not show violations of the parenting plan by Dustin. Particularly telling is the evidence of Karren's refusal to accept new or additional parenting time offered by Dustin.

Dustin provided evidence at trial of the amount of attorney fees he incurred in defending Karren's contempt actions. We find no abuse of discretion in the court's determination that Karren's contempt filings were made in bad faith or in its award of attorney fees to Dustin pursuant to § 25-824.

## VI. CONCLUSION

The district court did not abuse its discretion in denying Karren's applications for contempt or in finding her filings were made in bad faith and awarding attorney fees to Dustin based upon that finding.

AFFIRMED.