IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


BEATTY V. POITIER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BRIAN P. BEATTY, APPELLEE,

V.

ABBY G. POITIER, APPELLANT.


Filed February 3, 202,6.    No. A-25-282.


Appeal from the District Court for Douglas County: MOLLY B. KEANE, Judge. Affirmed in part, and in part reversed and remanded with directions.

Andrew J. Hilger, of the Law Office of Andrew J. Hilger, for appellant.

Kelly T. Shattuck, of Vacanti | Shattuck | Finocciaro, for appellee.


MOORE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Abby G. Poitier, now known as Abby G. Cullins, appeals from the order of the Douglas County District Court denying her request for specific rights of visitation. Abby assigns as error that the district court (1) lacked authority or discretion to partially vacate or retroactively modify the parties' paternity decree; (2) violated her right to procedural due process by partially vacating or retroactively modifying the paternity decree, without prior notice that change was under consideration; and (3) abused its discretion by denying her specific visitation and leaving her visitation at the custodial parent's unconditional discretion. For the reasons set forth herein, we affirm in part and in part reverse and remand with directions.

- 1 -

## II. STATEMENT OF FACTS

### 1. BACKGROUND

Brian and Abby are the biological parents of Samantha Beatty, who was born in 2009. After Abby failed to appear for the trial, in March 2017, the district court entered an order of paternity granting Brian sole legal and physical custody of Samantha and awarded Abby visitation solely at Brian's discretion until she complied with the Nebraska Parenting Act by completing a second level parenting course and attending mediation, or until she negotiated a modified plan with Brian that was acceptable to the conciliation court and the district court.

### 2. 2019 STIPULATED ORDER OF MODIFICATION

In January 2019, pursuant to a settlement agreement, the district court entered an order of modification wherein the parties agreed to decrease Abby's child support obligation. This order also provided, in part:

> [Abby] is restrained from filing for a modification in this case for financial purposes for a period of five (5) years. If an issue with custody of [sic] visitation develops the parties must first complete the second-level parenting class seminar and either attend mediation or negotiate a modified parenting plan that is acceptable to [the] Conciliation Court and the District Court prior to filing a modification.

### 3. ABBY'S SEPTEMBER 2022 COMPLAINT TO MODIFY AND BRIAN'S COUNTERCLAIM

In September 2022, Abby filed a complaint to modify, alleging that she had complied with the Nebraska Parenting Act as required under the initial decree and she requested that the district court modify the decree to provide her with regular visitation not subject to Brian's discretion. Brian filed an answer and counterclaim requesting, inter alia, that the court dismiss Abby's complaint and prohibit any visitation between Abby and Samantha other than that requested by Samantha, in a supervised setting, and at Abby's sole cost. Abby failed to appear at the December 2023 trial; however, the court granted her counsel's request to dismiss Abby's complaint without prejudice. The matter proceeded on Brian's counterclaim.

Following a hearing, the court entered an order on December 14, 2023, denying Brian's counterclaim requesting modification of visitation but awarding him attorney fees. Abby appealed the award of attorney fees to this court which affirmed. See *Beatty v. Poitier*, No. A-23-1026, 2024 WL 4033568 (Neb. App. Sept. 3, 2024) (unpublished memorandum opinion). On petition for further review, the Nebraska Supreme Court affirmed. See *Beatty v. Poiter*, 319 Neb. 56, 21 N.W.3d 295 (2025).

### 4. CURRENT PROCEEDINGS

Mere weeks after the court's December 14, 2023, order, Abby filed another complaint to modify the paternity decree to provide her with regular visitation that was not subject to Brian's discretion. Her complaint alleged that a material change in circumstances had occurred: to wit, that she had completed the second level parenting course, that she had attempted mediation with Brian who refused to participate, and that she subsequently attended an unsuccessful mediation with

Brian. Brian filed an answer and complaint which "affirmatively alleged," inter alia, that Abby had

> abandoned the minor [child] in every sense. She has not exercised any visitation for one-half (1/2) of the minor's life and has not even sent a card or present on holidays or birthdays. The minor child has no or very limited fleeting memories of [Abby] and has no desire now to upset her life with mandatory visits that based on [Abby's] history, would never be consistently exercised. Further, [Abby] is unfit to have visits with the minor and such visits would not be in [the minor child's] best interest[s].

Brian further alleged in a counterclaim that Abby had "completely failed to even attempt to maintain a relationship with the minor child" and requested "an order prohibiting visitation other than that requested by the minor child in a supervised setting at [Abby's] sole cost . . ."

The modification hearing was held in January 2025. Samantha, age 15, testified in chambers and her testimony was sealed. We reviewed Samantha's testimony, but we do not disclose that testimony here because the district court assured Samantha that neither the court nor the attorneys would disclose her testimony to Abby and Brian. We do note that, based upon Samantha's testimony, she appears to be mature for her age and expressed her wishes regarding visits with Abby.

(a) Abby's Testimony

Abby testified that, since the 2017 paternity decree, she has not had visitation with Samantha "because [Brian] won't allow me to," and Brian would not answer telephone calls. She stated that her attempts to see Samantha included one time she went to Samantha's school to see her during lunch when she talked to Samantha and gave her a cell phone so they could talk and so Samantha could call Abby "any time that she wanted to." Abby stated that she attempted to call Brian several times but the calls "would go straight to voice mail." She further testified that she recently sent an email to Brian to try to set up a visit, but Brian told her "that he'd rather go through the courts." She stated that, within the 6 months prior to the modification hearing, she contacted Brian so that she could wish Samantha a happy birthday, but Brian would not reply. Abby also testified that she is unable to contact Samantha on the phone that she provided to her because it "always goes to voice mail or it just rings and rings and rings and nobody answers." However, Abby admitted to calling Brian names and threatened to turn Samantha against Brian by texting that "Samantha will have nothing to do with [you] in the future." Abby admitted that it was wrong for her to communicate with Brian in that manner.

Abby further testified that she brought the current complaint for modification seeking expanded visitation because she had not had any visitation in "[a]bout five years" and that she was willing to start with "[a]ny amount" of visitation, that she was willing to attend supervised visits, that she was willing to go to therapy, and was "willing to do anything it takes to see my daughter."

Abby also testified that she attempted to mediate a modified parenting plan with Brian in 2020 and 2024, and that Brian participated in the mediation, but they were unable to agree on a plan. Abby admitted that she was over $2,000 in arrears on child support but stated that she has been trying to make regular payments and was attempting to become current on her child support payments.

Abby testified that she earned a pre-law degree from Metro Community College in 2022 and that she graduated with honors. She also testified that, in March, she planned to return to school to obtain a nursing degree. However, she admitted that in the last 5 years she has worked as an escort, but that she had not worked in that capacity for the last 6 months. She declined to admit that escorting is illegal and when confronted with advertisements on a website that were labeled as "offering men services" and listed her telephone number and showed photographs of her wearing "next to nothing," she claimed these were "old ads that I haven't taken down." An exhibit admitted into evidence showed Abby's advertisements for escort services were online as recently as November 2023. Additionally, in Abby's responses to interrogatories in November 2023, Abby admitted that her criminal history included convictions for disturbing the peace, solicitation of prostitution, attempted criminal mischief, and a federal conviction for extortion by interstate communication. Abby further stated that she "routinely pay[s] at least $300 per month to reduce her [child support] arrearage" but asserted that she could not produce the last 24 months of paystubs, a payroll summary from her employer, or copies of her tax returns from 2019 to 2022 because "[t]he requested items do not exist."

Abby further testified that, over the last 3 years, she has completed treatment for alcohol abuse, and she no longer drinks alcohol. She further testified that she got married and lived in a three-bedroom house that was safe for Samantha; however, she admitted that she and her husband had domestic disputes "a long time ago."

(b) Brian's Testimony

Brian testified that Abby's testimony providing she was willing to attend counseling and participate in supervised visitation was the first time since 2019 that she had agreed to those terms. He further stated that he would support Abby's relationship with Samantha if Abby took steps towards earning trust and rebuilding a relationship with Samantha because "it's very important for a mother to have a relationship with her child." According to Brian, Abby had a total of seven visits with Samantha in 9 years. An exhibit submitted by Brian and received into evidence showed the number of calls and texts that he had received from Abby from 2020 to 2024. In 2020 and 2021, Brian received no calls or texts from Abby. In 2022, he received two calls and six text messages from Abby. In 2023, he received six calls and six text messages from Abby. And in 2024, he received six calls and 25 text messages from Abby. Another exhibit submitted by Brian and received into evidence set forth that from 2021 to 2023, Abby has not had any visits with Samantha.

Brian also expressed concern that Abby has not had regular employment and that, in discovery, she did not admit to being an escort, which showed that Abby does not tell the whole truth. Brian further testified that his biggest concern was Samantha's safety and that

> [t]here is a long history of alcohol and domestic violence and then the prostitution. And I don't think any of these things are appropriate for a young child.

> [Samantha] has . . . a schedule with school and extracurricular activities, and I think it will [not be] healthy when she's ultimately exposed to these things. I don't have any confidence that. . . [Abby] is going to . . . be civil with Samantha when she's not that way with me and . . . has a long history of acting that way. So it's a safety concern for me.

Brian testified that Abby has admitted to substance abuse and addiction and to domestic violence in the home. He also testified that Abby and Samantha "are strangers at this point" and that it was "not wise to just throw these two together and have overnights."

## 5. ORDER OF MODIFICATION

Following the hearing, the court entered an order finding that since the entry of the paternity decree and 2019 modification order, there had been a substantial and material change of circumstances in that Abby had attended the second parenting class and she attempted mediation. Accordingly, the court stated that "the parenting plan is modified" to remove this language from the parties' parenting plan but found that Abby's parenting time "shall continue to be at [Brian's] discretion, but the Court orders that [Brian] strongly consider the wishes and feeling of the minor child in determining what visitation is appropriate and manageable given the minor child's activities schedule." The court further found that a change in legal or physical custody was not in the child's best interests. The court stated:

> In making this determination, the Court notes that although [Abby] did take the second parenting class and attempt mediation, the evidence does not demonstrate any real or substantial change in [Abby's] activities, lifestyle, and underlying issues that led to the determinations made in the original Decree . . . or Order of Modification . . . The Court finds [Abby's] testimony to not be credible for the most part and unsupported by any documentation or other evidence. There was no credible evidence of [Abby] making real and appropriate attempts to have parenting time or contact with the child in the years since the entry of the Decree. Rather, the evidence outlines an ongoing lack of attempted contact and communication with the child by [Abby], and the court finds that the attempts that have been made have been ill-conceived and inappropriate. According to the evidence presented, [Abby] has made little to no efforts to have a relationship with the minor child since 2019 other than the one unauthorized visit at the child's school in 2020. Furthermore, [Abby's] behavior with respect to the minor child and attempts to have a relationship with the child have been inconsistent at best. Subjecting the child to [Abby's] inconsistency is not in the child's best interest[s]. Therefore, further modification is not warranted as the Court finds that it is not in the best interests of the child.

Abby has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Abby's assignments of error, consolidated and restated, are that the district court (1) lacked the authority or discretion to partially vacate or retroactively modify the paternity decree; (2) violated her right to procedural due process by partially vacating or retroactively modifying the paternity decree, without prior notice that change was under consideration; and (3) abused its discretion by denying her specific parenting time and leaving her parenting time at the custodial parent's unconditional discretion.

## IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record and will be affirmed absent an abuse of discretion. *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025).

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024).

The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id*.

## V. ANALYSIS

### 1. Retroactive Modification or Partial Vacating of Prior Orders

Abby first assigns as error that the district court lacked the authority or discretion to partially vacate or retroactively modify the paternity decree. Abby misunderstands both the language contained in the 2017 paternity decree and the effect of the language contained therein and the court's current order of modification.

The original 2017 paternity decree awarded Abby visitation solely at Brian's discretion until she complied with the Nebraska Parenting Act by completing a second level parenting course and attending mediation, or until she negotiated a modified plan with Brian that was acceptable to the conciliation court and the district court. Abby misreads the court's earlier order--the conditions placed by the court for her to attend a parenting class and participate in mediation with Brian were not prerequisites that, once completed, entitled Abby to visitation with Samantha.

Instead, upon completing the conditions, Abby could request modification of the order to increase her parenting time that was restricted under the original paternity decree. Abby filed such a complaint requesting modification in 2022 but failed to appear at the trial and moved to dismiss her complaint, which request was granted by the district court. Shortly thereafter, she refiled her complaint again seeking modification. In a child custody modification action, the party seeking modification must demonstrate first that a material change in circumstances has occurred after entry of the previous custody order which affects the best interests of the child and that it in the best interests of the child that custody be changed. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

Following a hearing on the merits of this request to modify, the district court found that a material change in circumstances had occurred in that Abby had finally fulfilled the conditions that entitled her to seek a modification, but that it was not in Samantha's best interests to change the parenting time arrangement previously ordered by the district court in the original 2017 paternity decree. As such, the court issued an order that slightly modified the original 2017 paternity decree which removed the conditions that entitled Abby to seek modification, but which

retained the provision that allowed Brian to allow visitation at his discretion, subject to Brian considering the wishes of now 15-year-old Samantha in granting visitation. Under these circumstances, we reject Abby's contention that the district court lacked the authority to modify the original decree as both Abby and Brian specifically invoked the jurisdiction of the court seeking modification of the 2017 decree as amended.

And in response to the parties' requests to modify the original decree as amended, the court neither vacated nor retroactively modified the decree. Instead, it entered an order consistent with its findings that a material change had taken place and ordered slight revisions to the order based upon the evidence adduced and based upon what the court found was in Samantha's best interests. As such, as to Abby's specific assignment of error, we reject her claim that the court lacked the authority to enter the order or that its order was a "retroactive modification."

## 2. ALLEGED DUE PROCESS VIOLATION

Abby next assigns as error that the district court violated her right to procedural due process by partially vacating or retroactively modifying the paternity decree, without prior notice that change was under consideration. In the preceding section, we found that the court did not partially vacate or retroactively modify the paternity decree. Further, Abby filed a complaint for modification which specifically alleged, inter alia, that a material change in circumstances had occurred and which requested modification of the decree. Thus, Abby herself invoked the jurisdiction of the court seeking modification, and following a full hearing on the merits, now claims the court deprived her of due process by failing to notify her that a change to the decree was being considered. Due process does not guarantee an individual any particular form of state procedure; instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Having brought forth the issue of visitation in her complaint for modification and having participated in a full hearing on the merits governing her own claim and Brian's counterclaim, Abby was not only aware of the specific issues that would be considered but requested the court to consider them. As such, her claim that her due process rights were violated fails.

## 3. DISTRICT COURT'S DETERMINATION REGARDING PARENTING TIME

Abby's final assignment of error is that the district court abused its discretion by denying her specific visitation and leaving her visitation at the custodial parent's unconditional discretion.

Modifying a custody or parenting time order requires two steps of proof. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

Here, the district court found that a material change in circumstances had occurred based upon Abby having attended the required parenting class and having attempted mediation with Brian. However, in considering the child's best interests, the district court determined that modification of custody was not warranted because the court did not observe changes in Abby's

lifestyle since the court's original custody determination as modified in 2019. As such, the court concluded that a modification to its previous custody arrangement was not "warranted as the Court finds that it is not in the best interests of the child."

But notwithstanding its findings, the district court did slightly modify the parenting time requirements in its order. The district court found that Abby's parenting time "shall continue to be at [Brian's] discretion, but the Court orders that [Brian] strongly consider the wishes and feelings of the minor child in determining what parenting time is appropriate and manageable given the minor child's activities schedule." Abby assigns and argues that leaving Abby's parenting time at Brian's unconditional discretion is an abuse of discretion. We agree.

In *Syas v. Syas*, 150 Neb. 533, 535, 34 N.W.2d 884, 886 (1948), the Nebraska Supreme Court held that

> it can be said that a decree awarding one parent the custody of a child should, under normal circumstances, include a provision permitting the parent deprived of the custody to visit with the child under such conditions and in such manner as the circumstances may warrant and only under exceptional circumstances should that right be totally denied.

See also Neb. Rev. Stat. § 43-2932 (Reissue 2016) (governing parenting plans and limitations to protect child from harm). We do not view this record as an "exceptional circumstance" wherein parenting rights should be totally denied. Nor did the district court, as evidenced by the fact the court did not totally deny Abby visitation, but instead limited Abby's visitation rights to the discretion of Brian, albeit while requesting that he consult with the child. But as Justice Stacy reiterated in a concurring opinion to the Nebraska Supreme Court's decision in *Sulzle v. Sulzle*, 318 Neb. 194, 225-26, 14 N.W.3d 532, 555-56 (2024):

> Because determining custody and parenting time is a judicial responsibility, it cannot be controlled by an agreement or stipulation of the parties. And because the authority to determine custody and parenting time is a judicial function that cannot be delegated to others, Nebraska's appellate courts have consistently reversed provisions in decrees and parenting plans that purport to give parents, therapists, psychologists, or child support officers the authority to make such determinations. Given the clarity of our case law in this area, it is surprising that lawyers continue to propose parenting plans that include improper delegation provisions and that courts continue to approve them.
>
> . . . .
>
> To the extent this proposed parenting plan gave the mother "sole discretion" to determine whether the father would have any parenting time at all with the girls, it was an improper and unlawful delegation of judicial authority that should have been rejected by the court. Moreover, because the proposed plan contained no specific dates, times, or methods by which to determine the father's parenting time schedule with his daughters in sufficient detail to allow him to enforce the schedule through contempt proceedings, it should have been rejected on that basis too.

The same holds true regarding the modified decree here. Having limited Abby's parenting time to the sole discretion of Brian, the district court made an improper and unlawful delegation of judicial authority. As such, we reverse that portion of the district court's order and remand this

cause for the district court to fashion a parenting plan with appropriate limitations to protect the child based upon the court's findings contained in its most recent order.

## VI. CONCLUSION

In sum, we reject Abby's claims that the district court lacked the authority or discretion, or violated her right to procedural due process, when it modified the paternity decree. However, we agree with Abby that the district court abused its discretion by denying her specific parenting time and leaving her parenting time at Brian's unconditional discretion. Accordingly, we affirm the order of the district court in part, and in part reverse and remand with directions. We further note that Brian's brief states that Abby "should be ordered to pay Brian's attorney fees." Brief for appellee at 15. However, such a request is premature at this time. See Neb. Ct. R. App. P. § 2-106(G).

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.