IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CLIMER V. WILSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MELANIE CLIMER, APPELLANT,

V.

ISRAEL WILSON, APPELLEE.

Filed March 31, 2026.    No. A-25-311.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Desirae M. Solomon, of Desirae Solomon Law, for appellant.

Kimberly J. Workman, of Binning & Plambeck, L.L.P., for appellee.

MOORE, PIRTLE, and FREEMAN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Melanie Climer-Wilson, now known as Melanie Climer, appeals from an order of the district court for Saunders County denying her complaint to modify a custody order and parenting plan and dismissing her application to hold Israel Wilson in contempt for failing to comply with prior orders of the court entered in the parties' dissolution action. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. PROCEDURAL HISTORY

Melanie and Israel were married in May 2006 and together have two children: Reagan, born in 2007, and Hailey, born in 2011. A stipulated decree dissolving their marriage was entered by the district court in March 2021. The parties were awarded joint legal and physical custody of

their children. Pursuant to the attached parenting plan, Melanie was awarded 209 days with the children per year, and Israel was awarded 156. Joint legal custody was defined by the parenting plan as the parties having "mutual authority and responsibility of making fundamental decisions regarding their children's welfare and mutually participate in the responsibility of providing the parenting functions necessary for raising their children." The parties were ordered to discuss matters concerning the children, such as school related problems and decisions, and any behavioral or disciplinary issues which could impact both households.

The parenting plan also required the parties to keep each other "advised of their children's activities so that each may participate and support their children in such activities even if the children are not with them that day." Both parents were to notify one another prior to the children's medical appointments and notify one another of the children's activities and events as soon as possible so that the other parent had the maximum opportunity to attend.

The decree ordered Israel to pay child support in the amount of $809 per month for two children. The parties were ordered to share the costs of medical expenses not covered by insurance and all reasonable expenses associated with the children's participation in school and extracurricular activities, as well as other common expenses that were not likely to be duplicated in each household. Melanie was to pay 23 percent of costs and Israel 77 percent. The parties were to provide reimbursement requests for expenses monthly and the party owing was to provide reimbursement within 15 days of receipt.

As discussed further below, both children suffer from health issues, Reagan from headaches and Hailey from allergies and corresponding skin issues. An order of modification was entered on August 4, 2022, which stated that the parties should continue using Boys Town Pediatric Headache Clinic for Reagan's headaches and that Melanie maintained the right to have Hailey seen by Dr. William Ingram for a second opinion regarding allergy testing, at Melanie's own cost.

On February 25, 2024, Melanie filed a complaint to modify. The complaint alleged that Israel interferes with the children's medical and educational needs; does not follow the joint legal custody, decree, and parenting plan; has toxic behaviors which negatively affect the children's wellbeing; and the children desire to spend more time with Melanie. Melanie requested sole legal custody of the parties' children, or, in the alternative, the final decisionmaking authority. Melanie also requested sole physical custody, modified child support, and that Israel's parenting time be reduced.

The following day, Melanie filed a verified application and motion to show cause against Israel. The motion alleged that Israel had enrolled the children in activities without Melanie's knowledge or consent; refused to pay for his proportionate share of the children's health and direct and necessary expenses of at least $585.86; behaves in such a way that does not allow for Melanie to mutually participate in the responsibility of providing parental functions in the domain of the children's education and extracurriculars; does not inform Melanie of the children's activities; and provides foods to which Hailey is intolerant, which result in physical and emotional harm. The district court entered an order to show cause on February 27, 2024.

On March 20, 2024, Israel filed his answer to the complaint to modify, seeking its dismissal. That same day, Israel also filed an answer to the verified application and motion to show cause, denying each allegation.

## 2. TRIAL

A trial on the matter was held over 2 days in February 2025. The parties and both children testified, as well as Ingram and the children's therapist, Jody Jurgens.

### (a) Children's Mental Health

Jurgens, a licensed independent mental health practitioner, began seeing Hailey and Reagan in October 2023. Jurgens sees the children separately, but on occasions meets with both children and a parent. Jurgens initially saw the children weekly but now sees them every couple of weeks. Both Reagan and Hailey have a diagnosis of adjustment disorder with anxiety and depression, which Jurgens described as a "very modest diagnosis." Jurgens noted that the children do have anxiety about their parents' conflict, but the anxiety is not intense or continuous. Jurgens did not believe either child needed to be medicated.

Jurgens stated that the biggest issue had been conflict between Melanie and Israel at doctors' appointments. Both children feel embarrassed and distressed if a conflict between their parents occurs in public. In the last 6 months, the children have witnessed less conflict between their parents. Both parents are open to counseling, and both have reached out to her individually about parenting issues.

### (b) Hailey's Allergies

Ingram testified that his specialty involves the diagnosis and treatment of allergies. Ingram originally treated Hailey for allergies in 2013 when she was 16 months old. Hailey returned to see Ingram in January 2022 and presented symptoms including stomach pain and vomiting and an itchy rash. Ingram observed eczema on Hailey's left wrist, part of her elbow, and her left abdomen around her belly button. Following allergy blood testing, Ingram diagnosed Hailey with a Class I allergy to peanuts and avocados. Ingram explained that a Class I allergy results in skin itching, headaches, and a runny nose, in addition to stomach pain and vomiting. Ingram advised Melanie and Israel to avoid peanuts and avocado.

Following an allergy skin test, Ingram also diagnosed Hailey with environmental allergies to mold and cats. Ingram did not advise the parties to rehome their family cats but recommended keeping the cats out of Hailey's bedroom and putting dust mite protectors on pillows and mattresses. Though the family's cats were later rehomed or put down due to old age, Hailey's allergies did not improve in their absence.

Ingram treated Hailey four times in 2022. Melanie and Israel were present at all appointments and Hailey was absent from an appointment in March. Ingram observed tension between Melanie and Israel regarding Hailey's allergies each time they were at his office. Hailey testified that at one point her parents were arguing while in Ingram's office and Israel stated that he would not agree to any more testing. At the appointment without Hailey, Melanie and Israel had a disagreement over whether Hailey had allergies and the degree of those allergies. Ingram stated that Melanie believed Hailey had allergies and Israel did not. Israel testified that previous allergy tests conducted by Hailey's pediatrician in December 2021 reflected she had no food allergies. Ingram testified that he reviewed the tests conducted by the pediatrician and noted that the allergy testing he conducted in early 2022 had greater accuracy in detecting allergies.

Ingram testified that Hailey should never have peanuts and avocados as her continued exposure to the foods could result in increasingly severe allergic reactions. In August 2024, Israel communicated to Hailey's school that she did not have any food restrictions. He testified that he did so because the school had incorrectly listed that Hailey had a gluten allergy, which caused her to be separated from her classmates at lunch to avoid any food contamination. Melanie then communicated with the school to add peanuts and avocados as a food restriction. Ingram testified that he would be concerned if anyone relayed to the school that Hailey had no food restrictions as that was not the case.

Ingram's last appointment with Hailey occurred in August 2022. Ingram referred Hailey to a dermatologist for further allergy testing through patch testing and the treatment of eczema. He communicated that the family could follow up with him as necessary. Melanie testified that during this final appointment, another conflict between her and Israel arose and that Israel had revoked his consent to have Hailey treated by Ingram, which Melanie understood was necessary for further treatment given their joint legal custody. Ingram was not aware that Israel had revoked consent for further testing and Ingram had not told either party that he would no longer provide treatment to Hailey. Neither Melanie nor Israel have followed up with Ingram since August of 2022.

Israel testified regarding Hailey's allergies, "I just know she doesn't have an issue with anything. I mean . . . she knows what peanuts not to eat. . . Dr. Ingram says there's a food intolerance . . . [and] Methodist Hospital says she has none, so we have two [opinions]." Israel believes that Hailey's biggest issue is her environmental allergies to cats and dust mites. Israel acknowledged that he had told Melanie to stop the unnecessary allergy testing and to allow each parent to run their houses as they deem fit.

Reagan testified that she had seen Israel give Hailey peanuts in the past, but not for the past few years. In 2022, following Hailey's diagnosis by Ingram, Israel's parents gave Hailey a Butterfinger dessert, which caused her to vomit. Hailey testified that she had an allergic reaction to the dessert, due to it containing peanut butter, and that Israel told Hailey she only vomited because she ate it too quickly. Israel testified that he has never intentionally fed Hailey something that she is allergic to.

(c) Reagan's Headaches

Reagan attends the Boys Town Pediatric Headache Clinic for treatment of her headaches every 6 months. Both Melanie and Reagan testified that when Reagan reports having had headaches during Israel's parenting time to her providers, Israel will deny that she had any headaches. Israel testified Reagan was not informing him that she was having headaches during his parenting time. He was not intentionally providing conflicting information to her medical providers.

Reagan had reported to Jurgens that she felt discounted and anxious from the disagreements with Israel over whether she was having headaches and how to treat her headaches. Jurgens testified that she would not be surprised if Reagan failed to disclose to Israel that she was having headaches during his parenting time. Jurgens attributed this to the children being afraid to bring up issues to avoid causing conflict between their parents.

(d) Reagan's Educational Needs

Reagan has an Individualized Education Plan (IEP). Both Melanie and Reagan testified that in October 2023, Israel did not allow Reagan to attend a meeting regarding her IEP that occurred during his parenting time. Both parties agreed that there had been IEP meetings in the past where Reagan had not been present. Israel testified that in this October 2023 meeting, Reagan's school recommended that her speech therapy services be terminated and that everyone present, including himself, agreed. Reagan testified that she was not in agreement that her speech therapy should be terminated; rather, she would have preferred participating in the therapy more often.

Melanie requested another meeting with the IEP team to have Reagan present. Melanie was typically able to meet with the IEP team 2 weeks after requesting a meeting. In this instance, the meeting took 3 months to schedule. Melanie believed this unusual delay occurred because Israel would not consent to the meeting. Israel testified that he requested the school delay scheduling the subsequent IEP meeting until he was able to communicate with Melanie. Both children testified to hearing Israel yell during the subsequent IEP meeting, Reagan from the meeting room and Hailey from the hallway outside. Both children reported to Jurgens that they were embarrassed and anxious because of Israel's behavior. Israel denied yelling at the subsequent IEP meeting.

(e) Children's Activities

Both Reagan and Hailey participate in Girl Scouts and 4-H. Melanie is one of the leaders of the Girl Scouts and on occasion has switched parenting time weekends with Israel to allow for the children to attend Girl Scout camp.

In late 2022, Israel began taking the children to Gretna Music weekly for a 30-minute music lesson during his parenting time. Israel did not inform Melanie that he had enrolled the children in weekly music lessons. Because the music lessons occurred solely on Israel's parenting time, he did not believe the enrollment required a joint decision by both parties. Melanie learned about the music lessons from Hailey a few weeks after the children had been enrolled. When Melanie asked Israel about the lessons via text message in November 2022, Israel responded that since the lessons were not on her parenting time and did not concern her parenting, he would continue to take the children to them, and Melanie had no right to object.

At some point Hailey had an issue with her music teacher. She tried talking with Israel about the issue, but, according to her, he would not listen, causing Hailey to feel increasingly frustrated. Hailey then talked to Melanie about the issue. This issue was reported to Jurgens, who noted that Hailey has difficulty communicating and speaking up for herself. Jurgens spoke with Israel about allowing Melanie to intervene on Hailey's behalf. Jurgens testified that Israel was concerned about Melanie intervening as he was the parent who paid for the music lessons and transported the children to them on his parenting time.

It appears at some point Israel provided the owner of Gretna Music with Melanie's contact information. Melanie testified that she reached out to Gretna Music and Israel, but that Israel responded that he had already communicated with Gretna Music and because the conflict had happened on his parenting time, it was not Melanie's concern. Text messages were offered into

evidence, which demonstrated that Melanie was able to have direct communication with the owner of Gretna Music regarding the conflict with Hailey.

Israel provided a 2-week notice to Melanie about the children's music recital, which she was able to attend.

### (f) Chiropractic Appointments

Since the August 2022 modification, Melanie had a standing appointment on Mondays to take the children to the chiropractor, of which Israel was aware. Roughly a year later, Israel objected to her taking the children to the chiropractor each week as he wanted to take the children on one of his parenting days. Melanie invited him to attend the standing appointment instead. Melanie indicated that Israel had "cancelled" her standing appointment with the children's chiropractor and at the time of trial, Melanie was taking the children to the chiropractor every other Monday during her parenting time, and Israel was taking them every other Wednesday during his parenting time.

On one occasion, Israel took Reagan to the chiropractor without informing Melanie. Melanie testified that when she confronted Israel, he stated that he did not need to notify her because it was a drop-in appointment and that he had obtained treatment for Reagan after she expressed that she was in pain. Israel testified that he apologized to Melanie for not informing her and the next time he took Reagan to a drop-in chiropractic appointment, he notified Melanie.

### (g) Cost Sharing

Melanie began sending reimbursement requests to Israel in July 2023. She testified that she began doing so because as the children became older, the costs of their clothing and activities had grown. The parties disagreed regarding what expenses should and should not be reimbursable as a shared expense, with the disputed expenses mainly related to the children's clothing, vitamins and supplements, and activities.

Israel believed that he should not have to reimburse Melanie for the vitamins and supplements she provides for the children at her home as he provides vitamins to the children at his home as well. Israel likewise believes that clothing is not a shared cost as the children's clothing does not go back and forth between the parties' households. Melanie testified that the only clothing she requested reimbursement for was the children's school clothing.

When Israel initially signed the children up for music lessons, he communicated to Melanie that he would pay all the associated costs. But when Melanie began sending Israel reimbursement requests in July 2023, he began requesting that she share the costs of the music lessons. Emails entered into evidence also reflect that Israel was refusing to reimburse Melanie for the costs of some of the children's 4-H projects.

The parties each entered their own accounting regarding their requested reimbursements for shared expenses into evidence. Melanie believed that Israel owed her $1,269.58 for his percentage of the children's shared expenses from July 2023 to February 2024, which included vitamins and supplements, clothing, school-related items, and items for 4-H activities, as well as medical costs associated with Reagan's visits to the Headache Clinic. In September 2023, Israel sent Melanie a check for $114.06 regarding her July expenses. Israel later sent Melanie a check for $12.27 regarding her August expenses. Melanie did not cash them because she felt that Israel

would not reimburse her for the amounts she believed were owed to her. Israel believed that Melaine owed him $55.79. Other than the two checks, Israel has not reimbursed Melanie in any amount.

### (h) Children's Custody Preferences

Reagan testified that she would like to live mostly with Melanie and no longer spend the night with Israel. She would rather spend shorter periods of time with Israel, such as lunches and dinners. At the time of trial, Reagan was a senior in high school. As a college student, she would prefer the freedom to spend time with her parents as she would like.

Reagan noted some communication issues with Israel. She described instances where Israel becomes angry and yells, which causes her panic and anxiety. However, while she and Israel have disagreements, Reagan stated that she can communicate with him for the most part. She and Israel are able to talk about her goals and plans for her future. Reagan believes both of her parents listen to her for the most part. Reagan testified that at times Israel has spoken disparagingly about Melanie and members of Melanie's family. These comments upset Reagan, "but since I've heard it so much, I half the time ignore it, but sometimes it's kind of hard not to."

When asked about the current parenting time schedule, Hailey stated sometimes it can be too much, other times just right. Hailey testified that she would like a little more time with Melanie as she gets along with her better than Israel. Hailey would like for Israel to work on his anger. She did not tell him that she wanted more time with Melanie because she was fearful that he would become angry. However, Hailey also testified that she communicates well with Israel and has a positive and loving relationship with him.

### 3. ORDER

On April 3, 2025, the district court entered an order dismissing Melanie's application for contempt, finding that Israel had not intentionally, willfully or contemptuously violated the court's orders. The court found that there did not exist a material change in circumstances with regards to custody and parenting time but did find a material change of circumstances with regards to child support. The court modified Israel's monthly child support obligation from $809 to $917.

Melanie appeals.

### III. ASSIGNMENTS OF ERROR

Melanie assigns, consolidated, that the district court erred by (1) denying her complaint to modify, and (2) denying her application for contempt against Israel.

### IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Yochum v. Yochum*, 312 Neb. 535, 980 N.W.2d 17 (2022).

## V. ANALYSIS

### 1. COMPLAINT TO MODIFY

Melanie first assigns that the district court abused its discretion by failing to find that a material change in circumstances existed that warranted modification. Melanie argues that: Israel has interfered with the children's health care and educational needs, he has disparaged Melanie and her family to the children, the children now have a mental health diagnosis in part due to the conflict between the parties, Israel's "toxic" behaviors negatively affect the children's well-being, and the children desire to spend more time with Melanie. Brief for appellant at 27.

Ordinarily, the party seeking modification of a dissolution decree has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. See, *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024); *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Modifying a custody or parenting time order requires two steps of proof. *Mann v. Mann, supra*. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id*. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id*. Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Id*.

Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). The rationale for limiting modifications of custody and parenting time to only those necessitated by a material change in circumstances is to avoid extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. See *id.* Simply put, a custody or parenting time order will not be modified absent proof of new facts and circumstances arising since the order was entered that affect the best interests of the child. See *id.*

Where the party seeking modification advances multiple reasons for modification, Nebraska appellate courts do not consider whether each individual factor standing alone constitutes a material change; we instead consider all the facts and circumstances raised by the evidence to determine whether there has been a material change. See *Weaver v. Weaver, supra*.

When reviewing all of the facts and circumstances advanced by Melanie in support of her request to modify physical and legal custody and parenting time, we conclude that she failed to show a material change in circumstances.

Melanie argues that Israel fails to properly care for the children's health issues. She alleges that at doctors' appointments, Israel has told doctors that Reagan does not have headaches.

However, Israel testified that Reagan does not tell him that she has headaches during his parenting time. Reagan testified that she and Israel have communication issues and Jurgens testified that she would not be surprised if Reagan was not disclosing to Israel that Reagan was having headaches during his parenting time.

Melanie also argues that Israel continues to argue about whether Hailey has food allergies. Israel's testimony at trial reflects that he takes Hailey's environmental allergies to cats and dust mites more seriously than her allergies to foods. At trial he continuously referenced the discrepancies in Hailey's allergy testing conducted by her pediatrician and Ingram. Israel had also informed Hailey's school that she had no food restrictions after Ingram had informed both parties that she did. When Hailey had a negative reaction to a dessert containing peanut butter, Israel told her that she had eaten the dessert too quickly. However, Israel did say that he had never intentionally given Hailey a food she is allergic to. It also does not appear that Israel had revoked his consent for Hailey to be treated by Ingram.

Jurgens' testimony, along with the testimony provided by the children themselves, demonstrates that they are negatively affected by conflicts between their parents. Though the children have been diagnosed with adjustment disorder with anxiety and depression, Jurgens described the diagnosis as "very modest." Additionally, any distress the children experience when their parents are in conflict is isolated to that event. Jurgens also noted that the children had experienced reduced conflict in the 6 months preceding trial.

There is no evidence that any of the conflicts between Melanie and Israel regarding the children's health were new or that they were not contemplated in the prior decree and order of modification. The August 2022 modification specifically addressed the parties utilizing Boys Town for Reagan's headaches and Ingram for a second opinion on Hailey's allergies. Additionally, the evidence at trial demonstrated that the parties had disagreements regarding medical care for the children prior to the last order of modification and that the medical conflicts had generally lessened.

While the children testified that they would like to spend some more time with Melanie, their preference and any concerns with Israel and his anger were not material changes. Additionally, the conflicts regarding Reagan's IEP meeting in October 2023 and Israel failing to inform Melanie of a drop-in chiropractic appointment for Reagan appear to have been isolated incidents.

Upon our de novo review of the record in this case, we find no abuse of discretion in the district court's conclusion that the evidence adduced at the modification trial did not establish a material change in circumstances following the entry of the previous order that would warrant a change in legal or physical custody, or in parenting time. The parties presented conflicting testimony, and we give deference to the district court which heard and observed the witnesses. Since Melanie failed to establish a material change in circumstances, we need not address the best interests prong in this modification action. See *Mann v. Mann, supra*.

2. CONTEMPT

Melanie asserts that the district court abused its discretion in failing to find Israel in contempt of court for enrolling the children in music lessons without Melanie's consent, in

violation of the parenting plan; failing to pay his proportionate share of the medical expenses; and failing to pay his share of the direct and necessary expenses for the children.

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id*.

(a) Music Lessons

The parties share legal custody of their children. As such, their parenting plan requires that the parties exercise mutual authority and responsibility in making fundamental decisions regarding their children's welfare and mutually participate in the responsibility of providing the parenting functions necessary for raising their children. The parties were ordered to discuss matters concerning the children, such as school related problems and decisions, and any behavioral or disciplinary issues which could impact both households but were not explicitly required to discuss extracurricular activities. However, the parenting plan does require the parties to keep one another advised of their children's activities so that each may participate and support their children in such activities even if the children are not with them that day.

Melanie discovered that her children were enrolled in music lessons, not through communication with Israel, but by the children themselves. When Melanie asked Israel about the music lessons, he told her they did not concern her or her parenting. Melanie's contact information was only given to Gretna Music after Hailey had an issue with her teacher.

However, our review of the record shows no willful contempt by Israel. Based on the evidence presented at trial, it appears that Israel believed that his actions were in compliance with the parenting plan. Israel testified that he did not believe that he needed Melanie's consent to enroll the children in music lessons because the 30-minute weekly lessons were occurring solely on his parenting time and, at least initially, would be paid for solely by Israel. As such, Israel did not believe that the children's enrollment in music lessons required a joint decision by both parties. When Hailey had an issue with her music teacher, the issue was discussed with Jurgens, and Israel provided Gretna Music with Melanie's contact information. Israel also provided information regarding the children's music recital to Melanie, and she was able to attend.

The parenting plan that remains in force requires the parties to advise one another of their children's activities, even those held on their own parenting time. However, based on this record, we cannot say that Israel's violation of the parenting plan was committed intentionally. As such, the district court did not err in failing to find Israel in contempt of the activities and communications provisions of the parenting plan.

(b) Shared Expenses

Melanie contends that Israel should be found in willful contempt and ordered to pay Melanie $1,267.31. Melanie contends that when she began requesting reimbursements from Israel for various expenses, "he tried to offset her legitimate expenses by bringing claims for reimbursement with unclean hands." Brief for appellant at 35. Under the doctrine of unclean hands,

- 10 -

a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016). We interpret Melanie's argument to be that Israel improperly requested reimbursement for a share of the cost of music lessons, after Israel had communicated to Melanie that he would bear the entire cost of the lessons.

The decree ordered the parties to share all reasonable expenses associated with the children's extracurricular activities. The parties did not begin requesting reimbursements from one another until July 2023, and both parties presented evidence of expenses incurred for the children since then. Melanie's expenses for which she requested reimbursement included vitamins and supplements, clothing, school-related items, and items for 4-H activities, as well as medical costs associated with Reagan's visits to the Headache Clinic. Israel disputed some of the clothing expenses, as well as the vitamins and supplements, as he maintained that each party provided these items for the children at their respective homes. According to Israel, he attempted to discuss the expenses with Melanie and sent two checks for a portion of the expenses. Exhibits received in evidence show the ongoing discussion between the parties as to what qualifies for shared costs and show Israel's efforts to resolve the dispute.

Although we cannot say that the district court erred in finding Israel's failure to reimburse Melaine's expenses was not willful contempt, we emphasize that both parties are required to abide by the terms of the existing parenting plan with respect to the reimbursement of expenses.

## VI. CONCLUSION

We conclude that Melanie failed to show that a material change in circumstances occurred to necessitate a modification of child custody or the parenting plan. Additionally, the district court did not abuse its discretion in denying Melanie's application for contempt. Accordingly, we affirm.

AFFIRMED.